EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Petitioner,

v.

MISSISSIPPI COLLEGE, Respondent.

Civ. A. No. J78–0113(C).

United States District Court,
S. D. Mississippi,
Jackson Division.

May 5, 1978.

Warren E. Cox, Dist. Counsel, E.E.O.C., Jackson, Miss., for plaintiff.

E. Grady Jolly, Jr., Jackson, Miss., for defendant.

WILLIAM HAROLD COX, District Judge.

This case involves a controversy within the Equal Employment Opportunity provisions of the Civil Rights Act. The charging party is Dr. Patricia A. Sumners who contends that she was not employed in the Psychology Department of the college because she is a female. There is nothing before the Court in anywise involving any race question. The charging party and her husband have been employed as professors at Mississippi College. Dr. Sumners was baptized in the Baptist Church at Iuka, Mississippi when she was about ten years old and has remained in the church until around 1970 when she joined the Presbyterian Church to be with her husband in her church affiliation. She sought full time employment when there was an opening, but that job was awarded to a male professor of the Baptist faith.

Mississippi College is owned, controlled and operated by the Mississippi Baptist Convention as a part of its Christian Mission Program. This proceeding is basically and essentially to enforce a subpoena duces tecum ad testificandum. The petitioner contends and insists that it is simply investigating the facts to see whether or not the respondent is actually covered by the act or not. The Congress has no power, no authority to make any law in anywise affecting the establishment of religion or prohibiting the free exercise thereof.[1]

With such restriction, the Congress enacted and the President signed into law that section of the Code which makes it clear that the Chapter has no application to a female in the employ of Mississippi College.[2]

Under such circumstances, the petitioner has asserted that the respondent failed to hire Dr. Sumners solely because of the fact that she is a female. That contention is not denied, but the college contends that it is a privately owned and operated religious institution and that its decision may not be inquired into or changed by any disagreement with such conclusions; and least of all that the petitioner simply has no statutory authority to issue a subpoena and to require conformity thereto under any guise or pretext. Ninety-six percent of the full time members of the college faculty are Baptists. Eighty-eight percent of the students are Baptists. Two courses in Bible and chapel meetings twice a week are required of all students. There is no female minister in any Baptist church in the entire Mississippi Baptist Convention. Mississippi College did not hire a woman to teach Bible courses.

1. The First Amendment to the Constitution of the United States expressly provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, . . .." U.S.C.A.Const. Amend. I.

2. 42 U.S.C.A. § 2000e-1 provides: "This subchapter shall not apply to an employer with respect to the employment of aliens outside any State, or to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." 42 U.S.C.A. § 2000e-1 (1974).

Those overriding convictions may or may not find universal support among the Baptist faith, but this petitioner is not given any power or any authority even to seek evidence to establish such facts in seeking to determine whether or not it has jurisdiction of this case. Extensive evidence was taken by the Court Reporter and is before the Court and has been examined and considered, and this Court is of the opinion that the petitioner does not have jurisdiction even to maintain its investigation. This is by no means controlled, or even influenced by the decision of *New Orleans Public Service, Inc. v. William H. Brown, III*, (5 C.A.) 507 F.2d 160 which dealt with an employer who was clearly covered by and amenable to the act.

The State of Rhode Island had adopted a statute under which the state paid directly to teachers in non-public elementary schools a supplement of 15% of their annual salary. Under the state statute, the records of the religious schools had to be examined in order to assess how much of the expenditures were attributable to secular education and how much to religious activity. This statute was ruled unconstitutional.[3]

Another pertinent case which involved the National Labor Relations Board and certain Catholic parochial schools, the board sought to establish a collective bargaining relationship between the teachers and the school. The Court said that the First Amendment had interposed itself to prevent such relationship. The board sought to engage in factual inquiry into such matters which would necessarily raise First Amendment problems. The board attempted to assess the degree of religious activity involved in a particular decision, therefore necessarily involving itself in setting the religious standards for the institution. The United States Court of Appeals for the Seventh Circuit declined to grant the board such authority.[4]

This Circuit has held that the First Amendment to the Constitution precluded this petitioner from investigating charges of sex discrimination at a religious institution.[5]

Consequently, this Court is of the opinion that the Equal Employment Opportunity Commission has no power or authority to

---

3. *Lemon et al. v. Kurtzman*, 403 U.S. 602, 620, 91 S.Ct. 2105, 2115, 29 L.Ed.2d 745 where the Court said: "This kind of state inspection and evaluation of the religious content of a religious organization is fraught with the sort of entanglement that the Constitution forbids. It is a relationship pregnant with dangers of excessive government direction of church schools and hence of churches. The Court noted 'the hazards of government supporting churches' in *Walz v. Tax Commission*, supra 397 U.S., at 675, 90 S.Ct., at 1414, and we cannot ignore here the danger that pervasive modern governmental power will ultimately intrude on religion and thus conflict with the Religion Clauses."

4. In *The Catholic Bishop of Chicago v. The National Labor Relations Board*, (7 C.A.) 559 F.2d 1112, 1125 the Court said: "We are unable to see how the Board can avoid becoming entangled in doctrinal matters if, for example, an unfair labor practice charge followed the dismissal of a teacher either for teaching a doctrine that has current favor with the public at large but is totally at odds with the tenets of the Roman Catholic faith, or for adopting a lifestyle acceptable to some, but contrary to Catholic moral teachings. The Board in processing an unfair labor practice charge would necessarily have to concern itself with whether the real cause for discharge was that stated or whether this was merely a pretextual reason given to cover a discharge actually directed at union activity. The scope of this examination would necessarily include the validity as a part of church doctrine of the reason given for the discharge."

5. *McClure v. Salvation Army*, (5 C.A.) 460 F.2d 553, 558–59, 560 where the Court said: "The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern. Just as the initial function of selecting a minister is a matter of church administration and government, so are the functions which accompany such a selection."

\* \* \* "We find that the application of the provisions of Title VII to the employment relationship existing between The Salvation Army and Mrs. McClure, a church and its minister would result in an encroachment by the State into an area of religious freedom which it is forbidden to enter by the principles of the free exercise clause of the First Amendment."

seek or require that which it undertakes from the respondent. The subpoena heretofore issued in this case will be nullified. The efforts of the petitioner have been in vain and no relief will be granted.

This is a novel question which is comparatively new in this district and no recovery in any amount will be authorized or allowed as attorney's fees.

The respondent's attorney may prepare a judgment accordingly and an accompanying Findings of Fact and Conclusions of Law to support the judgment. There will be no taxation of costs in this case.