**Susan DOLTER, Plaintiff,**

v.

**WAHLERT HIGH SCHOOL, Defendant.**

No. C 79–1022.

United States District Court,
N. D. Iowa, E. D.

Jan. 28, 1980.

William G. Blum, Dubuque, Iowa, for plaintiff.

Michael J. Melloy, Dubuque, Iowa, for defendant.

McMANUS, Chief Judge.

This matter is before the court upon defendant's resisted motion to dismiss or in the alternative for summary judgment, filed September 19, 1979. Denied.

Plaintiff brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*, alleging sex discrimination resulting in termination of her employment as an English teacher at Wahlert High School in Dubuque, Iowa. She alleges her conformance with all relevant administrative procedural requirements to this civil action and seeks relief in the nature of reinstatement, back pay and attorney's fees. The specific allegations of the complaint relevant to defendant's motion to dismiss are that prior to February, 1978, plaintiff was employed as a teacher by defendant, was single and became pregnant. In February, 1978, she informed defendant of her pregnancy; and in March, 1978, both parties entered into a renewal of contract for her to teach in defendant's school during the 1978–79 school year in spite of her pregnancy. In June, 1978, defendant refused to honor that contract and terminated her employment allegedly on the grounds she was unmarried and pregnant. Plaintiff claims this constitutes sex discrimination.

Defendant moves to dismiss for failure to state a claim or for summary judgment on two separate grounds. First, defendant contends that since it is a private Roman Catholic High School affiliated with and under the auspices of the Roman Catholic Archdiocese of Dubuque, Iowa, any assertion of jurisdiction over it pursuant to Title VII would be in violation of the doctrine of separation of church and state as embodied in the Establishment and Free Exercise of Religion Clauses of the First Amendment to the United States Constitution. Second, defendant contends that pursuant to the "bona fide occupational qualifications" (bfoq) exception to Title VII, 42 U.S.C. § 2000e–2(e), defendant was entitled to set standards of morality for its teaching employees that accord with moral and religious precepts of the Roman Catholic Church;

and that since defendant terminated plaintiff for breach of those standards it cannot be held liable to her for sex discrimination.

### First Amendment Issue

■ In arguing that Title VII does not apply to Catholic schools and that if construed to apply to such schools it would violate the first amendment, defendant places singular and special reliance on the recent United States Supreme Court opinion in *National Labor Relations Board v. The Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979). In that case the Supreme Court held that schools operated by the Catholic Church to teach both religious and secular subjects are not within the jurisdiction granted by the National Labor Relations Act (NLRA), thus precluding the issuance of orders against such schools by the National Labor Relations Board. In so holding, the Court did not state that the NLRA violated the first amendment, although it noted constitutional problems might exist if the Act were construed to apply to labor relations in sectarian schools. What the Court did conclude was that Congress had not clearly expressed its intent to have the NLRA apply to labor relations in that context. Failing to find such clear and express congressional intent, the Court construed the NLRA not to apply, thus avoiding the first amendment question.

Thus, the Supreme Court in *Catholic Bishop of Chicago* set forth a two-pronged analysis for courts to apply when deciding issues such as those here raised by defendant. First, a court must decide whether Congress has "clearly expressed" its "affirmative intention" to have Title VII apply to Catholic or other sectarian schools. *Id.*

at 499, 502–06, 99 S.Ct. 1313. *But see, id.* at 506–10, 99 S.Ct. 1313 (Brennan, White, Marshall, Blackmun, JJ., dissenting). If the court finds such congressional intent, it must next decide whether application of Title VII's anti-discrimination strictures to Catholic or other sectarian schools would excessively entangle government with the religious mission of the school, thereby violating the religion clauses of the first amendment. *Id.* at 499, 99 S.Ct. 1313. *See also Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

A. *Congressional Intention.*

42 U.S.C. § 2000e–2(a)(1) provides in pertinent part:

(a) It shall be an unlawful employment practice for an *employer* —

(1) to . . . discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, *because of* such individual's . . . *sex* . . . ; (emphasis added).

It appears there is no dispute that defendant is an "employer" as defined by 42 U.S.C. § 2000e(b).[1]

However, 42 U.S.C. § 2000e–1 provides certain *religious* exemptions from coverage under the Act. It provides in pertinent part:

This subchapter [Title VII] shall not apply to an employer . . . or to a religious corporation, association, educational institution, or society *with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.* (Emphasis added).

---

1. 42 U.S.C. § 2000e(b) provides in pertinent part:

(b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . .

The term person includes "associations, corporations, . . . unincorporated organizations . . . ." 42 U.S.C. § 2000e(a).

Plaintiff claims sex discrimination because of her pregnancy. 42 U.S.C. § 2000e(k), effective October 31, 1978, provides in pertinent part:

(k) The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy . . . ; and women affected by pregnancy . . . shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . .

Thus, in the context of this case Title VII appears to contain at least a facial inconsistency; for defendant may be subject to the Act as an "employer", 42 U.S.C. § 2000e(b), and may yet be exempt from the Act, *at least with respect to its privilege of employing only Catholics to teach at its schools*, 42 U.S.C. § 2000e–1.

Prior to March, 1972, section 2000–1 exempted educational institution employees connected with educational activities whether the institutions were religiously affiliated or not. House Report 92–238, reprinted at 1972 U.S.Code Cong. and Admin. News, at 2154. Congress then enacted Public Law 92–261 to delete the exemption for employees engaged in the educational activities of *nonreligious* schools.

This deletion, however, tends to cloud Congress' intent in originally enacting section 2000e–1 in 1964, for it must be remembered that section 2000e–1 even as originally enacted is quite specific in its terms. It does not exempt religious educational institutions with respect to any and all discrimination. It merely indicates that such institutions may choose to *employ exclusively members of their own religion* to teach in their schools without fear of being charged with *religious* discrimination. Thus, in the context of this case Wahlert High School could choose to hire only Catholics and not be held liable for religious discrimination. That was the reading given to the section by the District Court for the Southern District of Mississippi, in *EEOC v. Mississippi College*, 451 F.Supp. 564 (S.D.Miss.1978), a case relied upon by defendant.

There is no indication in the legislative history that when Congress enacted the 1972 amendment it also intended to exempt sectarian schools from liability for *sex* discrimination. *See* 1964 U.S.Code Cong. and Admin. News, p. 2355; and 1972 U.S.Code Cong. and Admin. News, p. 2137. Thus, the court is limited to statutory construction in order to discern Congress' intent.

Adopting the rule of "expressio unius est exclusio alterius", the court concludes that Congress' intent was *not* to exempt sectarian schools from liability under Title VII *for discrimination based on race, color, sex or national origin*. In enacting the section 2000e–1 exemption, Congress expressly, specifically and narrowly exempted religious educational institutions only from liability for *religious* discrimination. Under the above mentioned rule of statutory construction, its decision expressly to exempt this one category of discrimination indicates its intent not to exempt other categories of discrimination.

Indeed, to construe section 2000e–1 to exempt *all* forms of discrimination in sectarian schools would itself raise first amendment problems since it would imply the government's special preference of sectarian schools over nonsectarian schools. *Cf., King's Garden, Inc. v. FCC*, 162 U.S. App.D.C. 100, 103–106, 498 F.2d 51, 54–57 (D.C.Cir.1974). The court, therefore, concludes that Title VII applies to sectarian schools where the charge is one of *sex* as opposed to *religious* discrimination,[2] *see Whitney v. Greater N. Y. Corp. of Seventh Day Adventists*, 401 F.Supp. 1363, 1367–68 (S.D.N.Y.1975); *compare, McClure v. Salvation Army*, 460 F.2d 553, 558 (5th Cir. 1972).

Having so concluded the court must next consider whether assertion of Title VII jurisdiction over defendant in the context of this case would violate the religion clauses of the first amendment because it would entail excessive government entanglement with the religious mission of the school.

B. *Excessive Entanglement.*

 Defendant's contention that assertion of Title VII jurisdiction over this case would entail excessive entanglement of government with the religious mission of the school is grounded on its essential argu-

---

**2.** Wahlert High School does not contend that Ms. Dolter was discharged because she was not a Catholic. It is conceded in this record that she in fact was a lay member of the Roman Catholic Church. Nor does Wahlert High School contend that her alleged violation of Catholic moral precepts caused her to be excommunicated or otherwise expelled from membership in the Catholic Church. The court, therefore, notes that at all times material Ms. Dolter was, and continues to be, a Roman Catholic.

ment that Ms. Dolter, as a Catholic lay teacher of English, is significantly involved in the religious pedagogical ministry of the Catholic Church.[3] To that extent, defendant asserts its right to impose upon all its teacher employees a code of moral conduct including the proscription of pre-marital sexual intercourse. It further contends that since Ms. Dolter *obviously* violated that moral code, it is protected under the first amendment in discharging her for her moral turpitude. Defendant concludes, therefore, that assertion of Title VII jurisdiction over it in the context of this case would necessarily require this court to pass judgment on the legitimacy of its religious teachings, its moral precepts and the administration of its religious pedagogical ministry. It appears to the court, however, that defendant misconstrues the issue to be decided in sex discrimination cases.

The court has no quarrel with defendant's contention that as a lay English teacher Ms. Dolter may nonetheless have been intricately involved with the religious pedagogical ministry of the Catholic Church. Nor does the court quarrel with defendant's contention that it can define moral precepts and prescribe a code of moral conduct that its teachers, including Ms. Dolter, must follow. In deciding plaintiff's claim, the court need not even concern itself in *any* way with the content of that code nor with the substance of Catholic teaching generally. Certainly the court need not pass judgment

on the substance of the Catholic Church's moral or doctrinal precepts. The only issues the court need decide are whether those moral precepts, to the extent they constitute essential conditions for continued employment, are applied *equally* to defendant's male and female teachers; and whether Ms. Dolter was in fact discharged *only* because she was pregnant[4] rather than because she obviously had pre-marital sexual intercourse in violation of defendant's moral code.[5]

To decide such strictly sex-based discrimination issues would not to any degree entangle this court in defendant's religious mission, doctrines or activities; much less excessively so. The labor relations context involved in *Catholic Bishop of Chicago, supra,* is clearly distinguishable since that context would entail Board scrutiny of the entire panoply of teacher employees' work obligations and responsibilities, such as what they could and could not be asked to teach; when they could be asked to teach it; and whether they could be asked, as part of their work responsibilities, to attend liturgies along with their students. *See id.,* 440 U.S. at 499–502 & n.10, 99 S.Ct. 1313, and Appendix thereto. Such expansive scrutiny into the day-to-day administration of defendant's school would not in the least be required in this case.

The court concludes, therefore, that its assertion of Title VII jurisdiction over plaintiff's claim of *sex* discrimination would

3. Defendant does not contend that Ms. Dolter was a priest in the Catholic Church. The court takes judicial notice of the fact that as of this time the Catholic Church does not ordain women as priests. Nor is Ms. Dolter alleged to be a nun or other member of a Catholic religious community or order.

4. The court certainly can take judicial notice of the fact that under present physiological laws of nature women are the only members of the human population who can become pregnant.

5. For example, if single male teachers at Wahlert High School, known to have engaged in pre-marital sex, were equally discharged any inference of sexual discrimination otherwise shown might be dissipated.

If, however, the actuality was that defendant's policy was not to discharge male teachers engaging in pre-marital sexual intercourse, but

was nonetheless concerned only with the effect Ms. Dolter's visible pregnancy might have on impressionable high school students, it could still have dealt with the matter short of resorting to her termination, thereby inviting a sex discrimination suit. For example, it could have honored its contract with her, but granted her paid leave of absence during the term of her pregnancy. Or it could possibly have assigned her to perform non-teaching duties. *See, e. g., Gunther v. Iowa State Men's Reformatory,* 612 F.2d 1079, at 1086 (8th Cir. 1980) [". . . [institution] must also demonstrate it could not reasonably rearrange job responsibilities in a way to minimize the clash between [legitimate institutional] interests . . . and the non-discrimination principal of Title VII."]

not entail excessive entanglement in the religious mission of defendant's school and would not be violative of the religion clauses of the first amendment.[6] *Compare Whitney, supra,* 401 F.Supp. 1363, 1367–68 with *McClure v. Salvation Army, supra,* 460 F.2d at 558–561. *See also* footnotes 2 and 3, *supra.*

### B.F.O.Q.

■ Finally, defendant contends it is entitled to dismissal or summary judgment because of the "bona fide occupational qualification" (bfoq) exception codified at 42 U.S.C. § 2000e–2(e), which provides in pertinent part:

> (e) Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, . . . on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise, and (2) it shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion.

Defendant argues that since plaintiff was a teacher at its school, she was also intricately involved in its religious pedagogical mission. As such, defendant contends that it was entitled to impose upon its teachers a code of religious moral conduct and to ex-

pect them to follow, in their personal life and behavior, the recognized moral precepts of the Catholic Church. It contends, therefore, that such code and precepts constitute a bona fide occupational qualification that plaintiff had to meet for continued employment as a teacher. Defendant concludes that it was plaintiff's alleged failure to meet such bfoq relating to morality that was the true reason for her discharge and not her sex.

The court is of the view that defendant's contentions relate to the parties' respective burdens of proof, *see e. g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), rather than to plaintiff's failure initially to state or support her claim.

Again, the court emphasizes what the issue is in this kind of case. The court has no substantive quarrel with the possible merits of defendant's contention that it may be entitled to impose a code of moral conduct as a bfoq. However, the court notes that defendant's asserted bfoq appears relate to more religious and/or moral qualifications than to sexual qualifications. To that extent, even where such code of conduct truly constitutes a legitimate religious bfoq, the law nonetheless requires that it not be applied discriminatorily on the basis of sex; that is, unequally to defendant's male and female lay teacher employees.

Moreover, by affidavit attached to her resistance, plaintiff asserts that she has knowledge that other single teachers, known to have violated defendant's asserted code of conduct by engaging in pre-marital sex, were not discharged as she was. This, of course, goes to the issue whether defendant's asserted bfoq defense is pretextual, *see McDonnell Douglas Corp. v. Green, supra,* and raises at least one crucial issue of fact that cannot be preliminarily resolved at this time upon a motion for dismissal or summary judgment.

It is therefore

---

**6.** It neither involves special preference for sectarian schools nor an unequal burden on them. It, in effect, would be neutral. *See King's Gar-*

*den, Inc. v. F. C. C.,* 162 U.S.App.D.C. 100, 105–106, 498 F.2d 51, 56–57 (D.C.Cir.1974).

ORDERED

Denied.