### NINTH & O STREET BAPTIST CHURCH, Plaintiff,

v.

### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Grabon, W.S., Brooks, Fred D., Felton, Sammie, Defendants.

Civ. A. No. C 85–0768–L(A).

United States District Court,
W.D. Kentucky,
at Louisville.

Aug. 16, 1985.

George R. Rawlings, Henry V. Sanders, Louisville, Ky., for plaintiff.

Michael Spalding, Asst. U.S. Atty., Katherine Kores, Sr. Trial Atty., E.E.O.C., Memphis, Tenn., Fred Brooks, Area Director, Sammie Felton, E.E.O.C., Louisville, Ky., for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALLEN, Chief Judge.

Plaintiff Ninth & O Street Baptist Church of Louisville, Kentucky [herein-

ruling on the instant motion. *See supra,* at 1229.

after "Church"], previously obtained a temporary restraining order enjoining and restraining defendant Equal Employment Opportunity Commission [hereinafter "EEOC"] from taking, issuing or enforcing any subpoenas against the plaintiff or from proceeding in any manner with an investigative or enforcement activity. Following the issuance of the temporary restraining order, a preliminary injunction hearing was held on August 13, 1985; and the matter is now ripe for a determination by this Court.

The EEOC subpoena, which is the subject matter of this controversy, is directed to the "Reverend Laverne Butler, Ninth & O Baptist Church, Early Childhood Development Center, In the Matter of Janice A. Teagardner." Before setting out the details of the subpoena, we note that Janice A. Teagardner is a white female who was discharged from her position as a teacher at the Early Childhood Development Center [hereinafter "Center"] on or about April 18, 1985. Some three days prior to the discharge, plaintiff announced its April 8, 1985, policy decision that all employees of the Center would be required to join the Church and that current staff who were members would be required to be active in the Church in order to retain their Center employment. Plaintiff also announced that the deadline for joining the Church would be September 1, 1985, with all non-member employees thereafter subject to discharge. See Exhibit 4 to Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

Mrs. Teagardner, who is a Baptist but not a member of Ninth & O, was concerned about this announcement. It appears from statements made by plaintiff's counsel that Mrs. Teagardner's sister then went to the EEOC to determine what Mrs. Teagardner's rights would be under the newly announced Church policy.

On April 30, 1985, Mrs. Teagardner filed a complaint with the EEOC alleging a retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. In this complaint Mrs. Teagardner stated that she was discharged because her employer had learned that the EEOC had been contacted about its recent personnel policy. She also stated that other employees who had not contacted the EEOC were not discharged. Her charge, therefore, specifically arises under 42 U.S.C. § 2000e–3, commonly referred to as the retaliation clause.

The subpoena addressed to the plaintiff is dated July 10, 1985, and requires plaintiff to bring to the EEOC all documents describing the relationship of the Ninth and O Street Baptist Church to the Center's day care workers; all documents describing the relationship of the Church to the children who attend the Center and their parents; all documents pertaining to the services provided by the Center; all documents and contracts relating to the day care workers at the Center; all documents describing their responsibilities; all documents describing the Center's policies relating to discipline; a copy of Mrs. Teagardner's personnel file; and a request for access to the personnel files of current and terminated employees during the time period of July 1, 1984 to the present.

Plaintiff vigorously contends its First Amendment rights would be violated if the EEOC were allowed to conduct any investigation into matters pertaining to Mrs. Teagardner and to its policies. Plaintiff further states that because Mrs. Teagardner's discharge was based on "her repeated conduct in 'sowing discord among the brethren' as condemned" in Proverbs Ch. 6, verses 16–19, this basic religious belief is protected by the First Amendment and not subject to interference by the EEOC. See Plaintiff's Memorandum in Support. EEOC, on the other hand, contends that it has the authority to determine whether it has jurisdiction in this matter, that the controversy is not ripe for review, that the plaintiff will not suffer irreparable harm, and that the public interest would not be served by the issuance of a preliminary injunction.

Defendant cites several cases which help to resolve this controversy. In *EEOC v. Mississippi College*, 626 F.2d 477 (5th Cir. 1980), *cert. denied*, 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981), EEOC appeal-

ed the district court's denial of a petition seeking enforcement of a subpoena issued in connection with its investigation of a charge of discrimination filed against Mississippi College. Mississippi College was owned and operated by the Mississippi Baptist Convention, which acquired the college in 1850. Ninety-five percent of the faculty members and eighty-eight percent of the students were Baptists. The college sought to assure that educational knowledge occurred in a Christian atmosphere and that the faculty and administrative officers were committed to the principle that the best preparation for life is a program of cultural and human studies permeated by the Christian ideal as evidenced in the tenets, practices and customs of the Convention and the Bible.

Although the college hired only males to teach biblical courses, it did employ Dr. Patricia Summers as a part-time assistant professor in the psychology department. While employed, Dr. Sommers expressed a desire for promotion to a vacant full-time slot. When she was not promoted, but a male was, she filed a charge of discrimination with the EEOC.

As in this case, the college refused to comply voluntarily with the EEOC's request for information which it deemed necessary to investigate the charges. When the college refused, the EEOC brought action in the district court seeking enforcement of the subpoena; but the district court denied enforcement. *EEOC v. Mississippi College*, 451 F.Supp. 564 (S.D.Miss. 1978).

On appeal, the Fifth Circuit, in vacating the district court's order and remanding on the question of which portions of the EEOC subpoena should be enforced, 626 F.2d at 489, first stated that if a religious institution of the type described in Title VII's exemption clause, 42 U.S.C. § 2000e–1, presents convincing evidence that its challenged employment practice results from discrimination on the basis of religion, then the EEOC is deprived of jurisdiction to investigate further to determine whether the religious discrimination was a pretext for some other form of discrimination prohibited by Title VII. However, the Court went on to hold that even if an institution falls within the exemption of § 2000e–1, the EEOC retains the authority to investigate allegations of discrimination based upon sex or race. *Id.* at 485.

■ Moreover, in discussing the college's First Amendment rights, the Fifth Circuit held that the application of Title VII to the college violated neither the Establishment Clause nor the Free Exercise Clause. *Id.* at 489. In determining whether a federal statute violates the Establishment Clause, the Fifth Circuit relied on the Supreme Court's three prong test: first, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; and third, it must not foster excessive government entanglement with religion. *Id.* at 486 (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971); *Committee for Public Education and Religious Liberty v. Regan*, 444 U.S. 646, 100 S.Ct. 840, 63 L.Ed.2d 94 (1980); *Roemer v. Maryland Public Works Bd.*, 426 U.S. 736, 96 S.Ct. 2337, 49 L.Ed.2d 179 (1976)). This Court is convinced that Title VII has a secular legislative purpose, that its effect neither advances nor inhibits religion, and that its application to the plaintiff does not foster excessive government entanglement with religion. An investigation by the EEOC to determine whether it has jurisdiction will only minimally intrude upon the Center's and Ninth & O's religious beliefs. No on-going interference with the religious practices of the Church will result from an EEOC investigation. Moreover, the EEOC has no power to require the Center or the Church to change its employment policies as only a federal court can require such change.

In finding no violation of the Free Exercise Clause, the Fifth Circuit again relied on criteria emphasized by the Supreme Court: namely, the magnitude of the statute's impact upon the exercise of religious belief; the existence of a compelling governmental interest justifying the burden imposed upon the exercise of the religious

belief; and the extent to which recognition of an exemption from the statute would impede governmental objectives. *Id.* 626 F.2d at 488 (citing *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963)). This Court agrees with the Fifth Circuit's analysis and conclusions.

In *EEOC v. Pacific Press Pub. Ass'n.,* 676 F.2d 1272 (9th Cir.1982), the Ninth Circuit Court of Appeals affirmed the district court's judgment that defendant Pacific Press, a non-profit religious publishing house, had violated Title VII by terminating a female employee in retaliation for her filing of discrimination charges with the EEOC. Pacific Press argued that because its dismissal of the employee was based on religious grounds, namely, her violation of church doctrines prohibiting lawsuits by members against the Adventist Church, it was exempt from the operation of Title VII. The defendant also argued that Title VII is unconstitutional under the First Amendment if applied to religious organizations.

In rejecting these arguments, the Court of Appeals found that by enacting Title VII, Congress clearly targeted the elimination of all forms of discrimination as a "highest priority." *Id.* at 1280. The Court pointed out that Congress' purpose to end discrimination is equally if not more compelling than other interests that have been held to justify legislation that burdened the exercise of religious convictions. *Id.*

Significantly, the Court also pointed out that an individual has a constitutional right to inform the government of violations of federal law. *Id.* (citing *In re Quarles,* 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895) and *Twining v. New Jersey,* 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908)). As noted by the Ninth Circuit, "protection of employees who participate in EEOC proceedings from retalitory job actions is essential to accomplish the purpose of Title VII." *Id.* 676 F.2d at 1281.

In *EEOC v. Southwestern Bap. Theological Seminary,* 651 F.2d 277 (5th Cir.1981), the Fifth Circuit in part reversed the dis-

trict court's judgment that the seminary was not required to file EEOC reporting forms. The seminary, a non-profit corporation controlled by the Southern Baptist Convention, argued that under the § 702 exemption in Title VII, it was exempt from the reporting requirement. Although the Court of Appeals held that the seminary was an institution entitled to the status of a church, it nonetheless was required under 29 C.F.R. § 1602.50 to fill out Report EEO-6. According to the Court, the burden of filing the information required in the report was not so heavy as to require a finding that the Free Exercise Clause of the First Amendment was violated. In addition, the Court noted that every fact set out in the report could be learned by the exercise of EEOC's subpoena power, and that enforcement of a subpoena in the context of an actual charge of discrimination is vital to the enforcement of Title VII. The Court did hold, however, that the seminary did not have to answer the form insofar as it applied to the employment relation between the seminary and its faculty because the faculty instructed the seminary in the whole of religious doctrine and only religiously-oriented courses were taught.

■ We conclude that at this stage of the proceedings the EEOC has the right to conduct an investigation to determine whether it has jurisdiction over the Center and Mrs. Teagardner's claim. While the EEOC has initiated a broad and sweeping subpoena, it has no power to enforce any of its findings, all of which are subject to a *de novo* review by a district court. In addition, while the EEOC investigation procedures may be somewhat burdensome, they will not interfere with the on-going activities of the Church and the Center.

■ In reaching a conclusion that a preliminary injunction should not be granted, we observe that we are governed by the standards set forth in *Mason County Medical Ass'n. v. Knebel,* 563 F.2d 256 (6th Cir.1977). In order to determine whether a preliminary injunction should issue, the district court must consider: (1) whether plaintiff has shown a strong or substantial

likelihood or probability of success on the merits; (2) whether the plaintiff has shown irreparable damage; (3) whether the issuance would cause substantial harm to others; and (4) whether the public interest would be served by the issuance. *Id.* at 261.

In the case at bar, we believe that plaintiff has not demonstrated the probability of success on the merits or of irreparable damage. We also believe that plaintiff has failed to show that its interest in religious freedom under the facts is superior to the public interest in having Title VII administered in a manner that protects all employees to whom it extends its protection. Therefore,

A judgment in accordance with this opinion will be entered this day.

## JUDGMENT

Plaintiff, having moved for a preliminary injunction, and the Court, having heard the arguments of counsel and having considered the matters of record, and having entered its Findings of Fact, Conclusions of Law and Memorandum Opinion,

IT IS ORDERED AND ADJUDGED that the motion of the plaintiff for a preliminary injunction be, and hereby is, denied.

IT IS FURTHER ORDERED AND ADJUDGED that the temporary restraining order previously entered be, and hereby is, vacated.

This is an appealable judgment, and there is no just cause for delay.