## NINTH & O STREET BAPTIST CHURCH, Plaintiff,

### v.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; W.S. Grabon; Fred D. Brooks; Sammie Felton, Defendants.

### Civ. A. No. C 85–1104–L(A).

United States District Court,
W.D. Kentucky,
Louisville Division.

Feb. 20, 1986.

George R. Rawlings, Henry V. Sanders, Rawlings & Associates, Louisville, Ky., for plaintiff.

Michael Spalding, Asst. U.S. Atty., Louisville, Ky., Jim Lager, E.E.O.C., Washington, D.C., for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALLEN, Chief Judge.

This action is submitted to the Court upon the motion of the plaintiff, Ninth & O Street Baptist Church [hereinafter "Church"], seeking a declaratory judgment and permanent injunction. Plaintiff seeks to bar the Equal Employment Opportunity Commission [hereinafter "EEOC"] and its employees, including co-defendants Brooks, Grabon and Felton from taking any action through the use of the subpoena power or any other powers to investigate the charges filed by Linda Cox and Tammy L. Arnold, two former employees of the Church's Early Childhood Development Center [hereinafter "Center"].

A preliminary injunction hearing was held before this Court on January 31, 1986. Exhibits reflect that Ms. Cox alleged in her EEOC complaint, filed on September 20, 1985, that the Center had unlawfully discharged her for religious reasons because she is a member of the Church of Christ of Latter Day Saints and had refused to join the Church to retain her employment at the Center. Ms. Arnold filed her charge of unlawful discharge for religious reasons on September 27, 1985. On October 17, 1985, defendant Felton, supervisor of the Rapid/Extended Unit of the EEOC, notified the Church that by November 7, 1985, it should file a position statement, including policies and procedures as they relate to the charges filed by Ms. Cox. On November 7, 1985, Mr. Felton took the same action with reference to Ms. Arnold, requesting the Church to file the information by November 26, 1985.

Plaintiff alleges that defendants have interfered with and usurped its right to the free exercise of religion under the First Amendment and that, therefore, plaintiff is entitled to a preliminary injunction prohibiting any further interference until such time as a permanent injunction and declaratory judgment is entered. We, however, disagree; and for the reasons set forth below, plaintiff's motion for a preliminary injunction will be denied.

This case is a companion to *Ninth & O Street Baptist Church v. EEOC,* 616 F.Supp. 1231 (W.D.Ky.), *appeal docketed,* No. 85–5832 (6th Cir. Sept. 11, 1985). In that case, the EEOC had directed a subpoena to the minister of the Church regarding a charge of retaliatory discharge pursuant to 42 U.S.C. § 2000e–3. Janice Teagardner, a white female, had been discharged from her position as a teacher in the Center following the Church's announcement of its policy decision that all employees of the Center would be required both to join the Church and to become active members to retain their employment. Plaintiff also had announced a September 1, 1985, deadline for joining the Church with the stipulation that all non-members would be subject to discharge after that deadline.

Mrs. Teagardner, a Baptist, but not a member of Ninth & O Street Baptist, alleged in her EEOC complaint that she had been discharged because her employer had learned that the EEOC had received an inquiry about the Church's recent personnel policy. Thereafter, but *before* the September 1, 1985, deadline, the Church discharged Mrs. Teagardner for "sowing discord among the brethen." 616 F.Supp. at 1231. In the instant case, Mss. Cox and Arnold, like Mrs. Teagardner, were employees of the Center, but they were discharged *after* failing to join the Church by deadline date. In plaintiff's brief and oral arguments in support of its motion for a preliminary injunction, it basically makes the same constitutional arguments as it did in the original action.

We believe the reasoning set forth in the first case, 616 F.Supp. at 1232–35, is equally applicable to the case at bar and requires the same decision. *See, e.g., EEOC v. Mississippi College,* 626 F.2d 477 (5th Cir. 1980), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981); *EEOC v. Pacific Press Pub. Ass'n.,* 676 F.2d 1272 (9th Cir.1982); *EEOC v. Southwestern Bap. Theological Seminary,* 651 F.2d 277 (5th Cir.1981). Therefore, we will adopt and incorporate that reasoning into these findings of fact and conclusions of law.

We also believe the plaintiff's reliance upon *Dayton Christian Schools v. Ohio Civil Rights Com'n.,* 766 F.2d 932 (6th Cir.1985), is misplaced. In that case, plaintiff Dayton Christian Schools [hereinafter "DCS"] terminated a pregnant teacher "for failing to follow the Biblical Chain-of-Command." 766 F.2d at 934. She then filed a charge of sex discrimination with the Ohio Civil Rights Commission [hereinafter "Commission"], alleging that she was discharged because of DCS' belief that "the mother's 'place is in the home'" when preschool age children are involved. *Id.* at 934–35. The Commission requested information from DCS and later informed it that a hearing would be held. After the hearing, the Commission advised DCS that it

had found probable cause to believe that DCS had engaged in unlawful discrimination. Although the Commission initially suggested that the parties enter into a conciliatory agreement and consent order, two months after this suggestion, the Commission issued a complaint against DCS. In DCS' answer, it asserted that the Commission lacked jurisdiction because the discharge had a religious basis.

DCS also filed an action pursuant to 42 U.S.C. § 1983 against the Commission seeking declaratory and injunctive relief. DCS alleged that enforcement of the Ohio Civil Rights Act as to itself violated the First, Ninth, and Fourteenth Amendments and that the Commission's exercise of jurisdiction over DCS and its hiring practices violated the First Amendment's Establishment Clause. Following a trial on the merits, the district court entered an order granting DCS an injunction pending appeal.

On appeal, the Sixth Circuit first held that the Commission's exercise of jurisdiction over DCS unduly burdened DCS' rights under the Free Exercise Clause. *Id.* at 955. It also held that application of the Ohio Civil Rights Act to DCS impermissibly entangled the state in violation of the Establishment Clause. *Id.* at 961. However, in analyzing the Ohio statute and its application to DCS, the Sixth Circuit clearly distinguished the case from actions brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* In noting the "two critical ways" in which Title VII differs from the Ohio statute, the Court stated that the case before it was distinguishable from Title VII cases because the Ohio statute lacked the exemptions for religious organizations provided in 42 U.S.C. §§ 2000e–1 and 2000e–2(e)(2). *Id.* at 941 n. 18. The Court also pointed out that when an act of discrimination might represent both religious and non-exempt forms of discrimination, the trial court in a Title VII action may inquire whether a religious or non-religious basis existed for the discrimination. *Id.*, citing *Dolter v. Wahlert High School,* 483 F.Supp. 266, 269–70 (N.D.Iowa 1980).

In the instant Title VII case, unlike the Ohio statute in *Dayton,* §§ 2000e–1 and 2000e–2(e)(2) permit admittedly religious institutions to engage in employment practices which discriminate on the basis of religion. In other words, here we do not have a neutral statute, such as the one in Ohio, pertaining to religious discrimination; rather, we have in Title VII a statute which permits discrimination in certain instances. Further, the EEOC, unlike the Ohio Commission, has no authority to force the plaintiff to alter its employment practices.

Therefore, in conclusion, we believe that the EEOC's investigative powers, granted to it by the statute and its regulations, neither seriously burden the plaintiff's rights under the Free Exercise Clause nor excessively entangle it with the plaintiff under the Establishment Clause. In light of this conclusion, and in light of our belief that the plaintiff has not met the test set out in *Mason County Medical Ass'n. v. Knebel,* 563 F.2d 256 (6th Cir.1977), and its progeny, we decline to issue a preliminary injunction. In so doing, we find that the plaintiff has not demonstrated a probability of success on the merits or of irreparable injury. We also find that the public interest would not be served.

We have entered this day a judgment in accordance with this opinion.