Charlene **WHITNEY**, Plaintiff,

v.

**GREATER NEW YORK CORPORATION OF SEVENTH–DAY ADVENTISTS**, Defendant.

**No. 75 Civ. 484.**

United States District Court,
S. D. New York.

Sept. 30, 1975.

---

Bernard M. Alter and Ira Greene, Brooklyn, N. Y., for plaintiff.

Townley, Updike, Carter & Rodgers, New York City, for defendant; Joseph F. Kelly, Jr., William A. Alper, New York City, of counsel.

LASKER, District Judge.

Charlene Whitney sues Greater New York Corporation of Seventh-Day Adventists (Adventists), alleging unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and denial of equal rights in violation of 42 U.S.C. § 1981.

On or about December, 1967 Whitney was hired by Adventists to be a typist-

receptionist. In addition, "but not incidental to her employment," (Complaint, ¶ V, B) she rented an apartment in a multiple dwelling owned and operated by Adventists. According to her complaint, Whitney, a white woman, was discharged on April 21, 1969 and evicted on June 17, 1969 solely because she was maintaining a casual social relationship with one Samuel Johnson, a black man. She alleges that these actions were racially motivated and were the culmination of a series of threats and warnings to discontinue the friendship which began in September of 1968. She seeks compensatory and punitive damages in the amount of $300,000.

Pursuant to Rule 12, Federal Rules of Civil Procedure, the defendant moves to dismiss all or part of the complaint on the grounds that: 1) Whitney lacks standing to bring this action under either Title VII or § 1981 and the complaint fails to state a claim upon which relief can be granted; 2) the application of either statute in the circumstances of this case would violate the defendant's rights under the Free Exercise Clause of the First Amendment; 3) compensatory and punitive damages are not recoverable under either statute; 4) the allegation in ¶ V, K of a "reprisal action" must be stricken because it has not been presented to the Equal Employment Opportunity Commission (EEOC), as required by § 706, 42 U.S.C. § 2000e–5; and 5) the claim under § 1981 is time barred.[1]

### I. *Plaintiff's Standing and Claim for Relief under Title VII*

#### A. *The Discharge*

Section 703(a)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (1974) makes it an unlawful employment practice for an employer

"to discharge any individual, or otherwise to discriminate against any individual with respect to his compensa-

1. The plaintiff concedes that this part of Adventists' motion must be granted. *Johnson v. Railway Agency, Inc.,* 421 U.S. 454, 95 S. Ct. 1716, 44 L.Ed.2d 295 (1975).

tion, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin."

Adventists contends that the complaint is defective because it does not allege that Whitney was discharged because of *her* race but, rather, because of the race of her friend, Samuel Johnson, and that the law is settled that white plaintiffs cannot maintain a Title VII action because of alleged discrimination against a minority group member.[2] It is argued that the plaintiff therefore "lacks standing"[3] to assert a claim under Title VII and fails to state a claim upon which relief can be granted.

■ The argument is unpersuasive. Manifestly, if Whitney was discharged because, as alleged, the defendant disapproved of a social relationship between a white woman and a black man, the plaintiff's race was as much a factor in the decision to fire her as that of her friend. Specifying as she does that she was discharged because she, a white woman, associated with a black, her complaint falls within the statutory language that she was "discharge[d] . . . because of [her] race."

■ This reading of the statute is consistent with the administrative construction of the Act, a consideration which is entitled to "great weight." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). In EEOC Decision No. 71–909, 3 FEP Cases 269 (1970), the Commission found reasonable cause to believe a Title VII violation had occurred where a white employee was discharged because of his friendly associa-

---

2. Although several courts have so held, *Equal Employment Opportunity Comm. v. National Mine Service*, 8 FEP Cases 1233 (E.D.Ky. Nov. 8, 1974) ; *Waters v. Heublein, Inc.*, 8 FEP Cases 908 (N.D.Cal. 1974), it is not clear that the law is settled on this point. See *Thomas v. Ford Motor Co.*, 6 EPD ¶ 8945, at 6031 n. 24 (E.D. Mich.1973) ; EEOC Decision No. 71–969 (Dec. 24, 1970), CCH EEOC Decisions (1973) ¶ 6193. Cf. *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S. Ct. 364, 34 L.Ed.2d 415 (1972). We need not deal with this issue, however, because it is apparent from her complaint that the plaintiff is bringing this action because of perceived discrimination against herself, not Mr. Johnson.

3. The defendant's argument reflects a fundamental confusion with regard to the problem of standing. "The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). This question has two dimensions. The constitutional dimension is that which looks to the litigant's "personal stake in the outcome of the controversy." *Warth v. Seldin, supra*, quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). To meet the "case or controversy" requirement of Article III a plaintiff must allege some "injury in fact," *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U. S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184

(1970), for the jurisdiction of a federal court may be invoked only where the plaintiff himself has suffered "some threatened or actual injury resulting from a putatively illegal action." *S. v. D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). To the extent that the defendant here asserts that Whitney lacks standing in the constitutional sense, the contention is almost frivolous. She has plainly alleged that she has lost her job and her apartment as a result of the defendant's assertedly illegal act. The "prudential" dimension of standing, *Warth v. Seldin, supra*, is also irrelevant to this case. It involves the proposition that "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of [others]." *Warth v. Seldin, supra*, 422 U.S. at 499, 95 S.Ct. at 2205. . Despite the defendant's effort to characterize this action as an attempt by Whitney to vindicate Mr. Johnson's civil rights, such a characterization simply will not do. The complaint is plainly directed toward a vindication of her own rights under Title VII to be free from racially discriminatory employment practices.

Thus, as we view it, the more accurate way to frame the issue raised by the defendant is whether Whitney has stated a claim upon which relief can be granted under the provisions of Title VII.

tions with black employees. The Commission stated that "Inasmuch as Charging Party was distinguished from other employees only to the extent that he fraternized with employees whose race was not the same as his, we regard it as reasonable to infer that the treatment afforded him was based, at least in part, upon his race." 3 FEP Cases at 269. Accord EEOC Decision No. 71–1902, 3 FEP Cases 1244 (1971); EEOC Decision No. 71–969 (1970), CCH, EEOC Decisions (1973) ¶ 6193; *Gutwein v. Easton Publishing Co.,* 8 E.P.D. ¶ 9728 (Md. Oct. 8, 1974).

The cases cited by the defendant to support its contention are, with one exception, not on point. They deal with situations in which white persons attempted to use Title VII to solve employment problems where no racial discrimination of any kind was alleged, *Rios v. Enterprise Association Steamfitters Local Union No. 638,* 520 F.2d 352 (2d Cir. 1975); *Patterson v. Newspaper and Mail Deliverers' Union of New York and Vicinity,* 514 F.2d 767 (2d Cir. 1975); *Marshall v. Plumbers and Steamfitters Local Union 60,* 343 F. Supp. 70 (E.D.La.1972); or where courts held that white employees have no standing to charge their employers with racial discrimination against minorities. *EEOC v. National Mine Service Co.,* 8 FEP Cases 1233 (E.D.Ky. Nov. 8, 1974); *Waters v. Heublein Inc.,* 8 FEP Cases 908 (N.D.Cal.1974). The decisions of the United States Court of Appeals for the Second Circuit in *Rios* and *Patterson, supra,* focus on the rights of non-minority workers where Title VII actions have been brought against their employers by minority group co-workers. In both instances, the white employees attempted to intervene and take advantage of the Title VII actions to rectify perceived injustices in their employment conditions, but made no allegations that they had been the object of race discrimination themselves. The court simply held that no Title VII rights exist, absent an allegation of the discrimination

proscribed by § 703(a). *Rios, supra,* 520 F.2d at 355–356; *Patterson, supra,* 514 F.2d at 772. Nothing in either of these decisions supports the proposition that a white person cannot maintain a Title VII action when he does allege that he has been a victim of racial discrimination. The language in *Patterson* that, "[Title VII] creates no rights or benefits in favor of non-minority persons or groups," *supra* at 773, is not to be read literally, since to do so would grossly distort the context in which it appears. The court observed that:

> "This case arises under a statute which by its terms is limited to protection against employment discrimination based on an individual's 'race, color, religion, sex or national origin.' [The non-minority intervenor] does not allege discrimination against him based on any of these factors. . . . Any past denial of promotion rights to [the non-minority intervenor] is clearly not remediable under Title VII." (Citations omitted). *Patterson, supra,* at 772.

See *Rios, supra,* 520 F.2d at 356.

It is true that *Ripp v. Dobbs Houses, Inc.,* 366 F.Supp. 205 (N.D.Ala.1973), a case factually on point, concluded that a white employee who was discharged for associating with black co-workers had not stated a claim under Title VII. We disagree with the decision.

### B. The Eviction

The defendant's motion to dismiss the charge of a discriminatory eviction stands in a different posture. The complaint specifies that plaintiff's residence in the Adventists' building was "at no time . . . considered as a condition of employment," and was "not incidental to her employment." These facts exclude the possibility of stating a claim under Title VII, which is aimed solely at discrimination in employment.

### II. The First Amendment Defense

Adventists moves to dismiss the entire complaint on the grounds that, even if

the facts alleged do state a claim under Title VII, enforcement of the statute in this case would violate its right to the free exercise of religion. In support of this contention it relies primarily on *McClure v. Salvation Army,* 460 F.2d 553 (5th Cir. 1972). There the court held that application of the provisions of Title VII to the employment relationship between the Salvation Army and Mrs. McClure, a discharged Salvation Army officer, would infringe the First Amendment rights of the Salvation Army. The holding rested on the well established proposition that secular government must remain entirely aloof from matters of church administration or ecclesiastical law. *Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952); *Gonzalez v. Roman Catholic Archbishop,* 280 U.S. 1, 50 S.Ct. 5, 74 L.Ed. 131 (1929); *Watson v. Jones,* 13 Wall. 679, 80 U.S. 679, 20 L.Ed. 666 (1871). The key to the decision in *McClure* was the court's observation that:

> "The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern." 460 F.2d at 558–559.

The court took pains to emphasize that its holding was limited to the "church-minister relationship" and that it was "expressly refraining from any decision as to other church employees of a type not involved in this controversy." *Id.* at 555.

 The facts here do not fall within the holding of *McClure.* In this case we are dealing with the discharge of a typist-receptionist, not a minister. Nothing in the record indicates that, much less specifies how, Whitney's dis-charge was based on the doctrinal policies of the Seventh-Day Adventist Church or that the relationship between the church and its clerical help touches so close to the heart of church administration as to be protected by the First Amendment from the commands of Title VII. Accordingly, that portion of the motion based on the First Amendment is denied.

### III. Damages

In her prayer for relief the plaintiff has not sought the traditional Title VII remedies of reinstatement and back pay, but rather, she has requested compensatory and punitive damages. Adventist moves to strike the prayer for compensatory and punitive damages on the ground that they are not recoverable under Title VII.

 Section 706(g), 42 U.S.C. § 2000e–5(g) (1974) reads, in pertinent part:

> "If the court finds that the respondent has intentionally engaged in . . . an unlawful employment practice . . . the court may . . . order such affirmative action as may be appropriate which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate. . . . Interim earnings or amounts earnable with reasonable diligence . . . shall operate to reduce the back pay otherwise allowable."

The question whether this language should be construed to authorize the award of compensatory and punitive damages, traditionally classified as legal remedies, or whether it limits the court to the exercise of equitable powers only, is one of first impression in this Circuit. Other courts have differed in their conclusions.[4] Almost every court which

---

4. Compare *Equal Employment Opportunity Commission v. Detroit Edison Co.,* 515 F.2d 301 (6th Cir. 1975); *Van Hoomissen v. Xerox Corp.,* 364 F.Supp. 829 (N.D.Cal.1973); *Howard v. Lockheed-Georgia Co.,* 372 F. Supp. 854 (N.D.Ga.1974); *Atkisson v.* *Bridgeport Brass Co.,* 5 FEP Cases 919 (S. D.Ind.1972) (denying compensatory or punitive damages); with *Tooles v. Kellogg Co.,* 336 F.Supp. 14 (N.D.Neb.1972) (denying the possibility of compensatory but not punitive damages); *Humphrey v. Southwestern Port-*

has considered the matter at length, however, has determined that neither compensatory nor punitive damages are available in a Title VII case. Conversely, those courts which have held such relief to be recoverable have done so on the basis of little discussion or analysis. While it is true that to deny the possibility of such relief at this stage of the proceedings is a serious matter, *Gary v. Industrial Indem. Co.*, 7 FEP Cases 193, 196 (N.D.Cal.1973), a study of the issue leads to the conclusion that to do otherwise would be to amend the statute. Three factors are of particular significance: the language of the statute, its legislative history, and comparison with analogous statutes.

Nowhere does the statute itself expressly authorize the award of damages, either general or punitive. Moreover, since such damages have historically been regarded as remedies at law, it is reasonable to argue from the language of the statute, which speaks solely in terms of equitable relief, that neither compensatory nor punitive damages are authorized by the Act. The monetary recovery contemplated by the back pay provision has been generally interpreted to constitute an award of restitution rather than damages. See, *Curtis v. Loether*, 415 U.S. 189, 197, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974); *Johnson v. Georgia Highway Express Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969). This view is supported by the statutory language that: "Interim earnings or amounts earnable with reasonable diligence . . . shall operate to reduce the back pay otherwise allowable." [5] Although the statute also authorizes a court to order "appropriate affirmative action," we agree with the Court of Appeals for the Sixth Circuit that such relief must, under accepted principles of statutory construction, be "limited to relief of the same general kind, that is equitable relief . . ." *Equal Employment Opportunity Comm. v. Detroit Edison Co.*, 515 F.2d 301, 309 (6th Cir. 1975).

*Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829 (N.D.Cal.1973), considered the legislative history of § 706(g) in depth. 368 F.Supp. at 836–37. The court's review led it to conclude that Congress' objective in drafting § 706(g) was to provide courts with a "wide panorama of equitable tools" to eliminate employment discrimination; not to "punish defendants by imposing upon them large money awards in the form of compensatory and punitive damages." 368 F.Supp. at 836. This conclusion, with which we agree, is consistent with the Supreme Court's recent comment that the "primary objective" of Congress in enacting Title VII "was a prophylactic one." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Accordingly, the Act is to be regarded as a mechanism to furnish relief and restitution to victims of a social evil, not to create a new cause of action for personal injuries "otherwise actionable." *Atkisson v. Bridgeport Brass Co.*, 5 FEP Cases 919, 920 (S.D.Ind.1972).

Comparison to analogous statutes is illuminating. The provisions of § 706(g) follow the pattern of the National Labor Relations Act, 29 U.S.C. § 160(c), which provides, in relevant part for "affirmative action, including reinstatement with or without back pay." Neither punitive

---

land Cement Co., 369 F.Supp. 832 (W.D. Tex.1973) *rev'd on other grounds*, 488 F.2d 691 (5th Cir. 1974) (granting compensatory damages); *Gary v. Industrial Indem. Co.*, 7 FEP Cases 193 (N.D.Cal.1973), and *Dessenberg v. American Metal Forming Co.*, 6 FEP Cases 159 (N.D.Ohio 1973) (ruling that punitive damages may be awarded).

5. This view also accords with the Supreme Court's recent description of Title VII as a "make whole" statute, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280, 43 U.S.L.W. 4880, 4884 (June 25, 1975), designed to "arm the courts with full equitable powers" to "'eliminate the discriminatory effects of the past as well as bar like discrimination in the future'." *Albemarle Paper Co., supra*, quoting *Louisiana v. United States*, 380 U.S. 145, 154, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965).

nor compensatory damages have been awarded under the NLRA and it appears that Congress intended relief under Title VII to be similar. *Van Hoomissen v. Xerox Corp., supra,* 368 F.Supp. at 837; Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964, [Development Note], 84 Harv.L.Rev. 1109, 1259 n. 349 (1971). Cf. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 419, & n. 11, 95 S. Ct. 2362, 45 L.Ed.2d 280.

Moreover, Title VIII (Fair Housing Provisions) expressly provides for an award of "actual damages and not more than $1,000. punitive damages." The Civil Rights Act of 1968, § 812, 42 U.S. C. § 3612 (1974). Although Title VIII was already law in 1972 when amendments to the remedial section of Title VII were enacted, *Van Hoomissen v. Xerox Corp., supra,* at 836, no such specific provision for punitive damages was included in the amendments. We are entitled to consider that the exclusion was deliberate. See *EEOC v. Detroit Edison Co., supra,* 515 F.2d at 309.

While none of these considerations standing alone may be dispositive, their cumulative effect is persuasive. This is particularly true in the absence of strong countervailing arguments.

In her brief Whitney places great reliance on a "federal court tradition [of granting] necessary relief to remedy a wrong once a cause of action is created by Congress." (Plaintiff's Brief in Opposition, at 9). The argument would have more force were it addressed to a statute with less specific remedial provisions. In *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), for example, the Supreme Court found a private right to damages under § 1982 and observed that "the existence of a statutory right im-

plies the existence of all necessary and appropriate remedies." *Id.* at 239, 90 S.Ct. at 405. In stark contrast to the general language of §§ 1982 and 1983, however, the remedies available to a Title VII plaintiff are set forth in some detail. A determination of the proper scope of relief under Title VII must focus on the statutory language. See *Van Hoomissen v. Xerox Corp., supra,* 368 F.Supp. at 838.

Whitney also argues that "there are other evils resulting out of employment discrimination for which back pay is not a sufficient recompense." (Plaintiff's Brief in Opposition, at 10.) On this point, the analysis in Development Note, *supra,* is persuasive. 84 Harv.L.Rev. at 1259–60. Compensation for virtually any economic harm caused by unlawful employment practices may be awarded under the rubric of "back pay."[6] Therefore, only psychological injuries, such as humiliation and mental suffering, are left uncompensated. For the reasons set forth above, we agree with the conclusion that to grant such relief would not only "strain the language of the Act," but would also be "of doubtful propriety, particularly since the extent of congressional concern for the intangible losses of the individual is suspect." Developments Note, *supra,* 84 Harv.L.Rev. at 1259–60.

The award of punitive damages, which have nothing to do with recompense to an aggrieved individual, would appear to be even more difficult to justify than compensatory damages. The former are classically considered an extraordinary sanction, available only under aggravated circumstances, to penalize a party for engaging in notably reprehensible conduct, whereas the latter are generally available as a matter of course to plaintiffs who can demonstrate

---

6. Indeed, several of the cases cited by Whitney in support of her damage claim are cases which grant some variety of "back pay" or restitutionary monetary relief and do not stand for the bald proposition that "damages" are awardable to Title VII plaintiffs. *Rosen v. Public Service Electric & Gas Co.,* 477 F.2d 90 (3rd Cir. 1973) (award of back pension benefits); *Chastang v. Flynn & Emrich Co.,* 381 F.Supp. 1348 (D.Md.1974) (award of back retirement benefits). See Developments Note, *supra,* 84 Harv.L.Rev. at 1259–60 & n. 350.

an injury. If Congress did not authorize an award of compensatory damages under Title VII the conclusion that it did not authorize a judgment for punitive damages seems still more probable.

*IV. The Reprisal Allegation*

 The defendant moves to strike what it terms the plaintiff's allegation of a "reprisal action" in ¶ V, K of the complaint on the grounds that the claim was not raised before the EEOC as required by § 706, 42 U.S.C. § 2000e–5. The paragraph reads:

> "Plaintiff, a caucasian female, alleges that defendant denied her equal terms and conditions of employment, living accommodations, took reprisal action against her and subsequently discharged her from her position as a typist because of her association with a Negro, who is also a male . . . ."

It is not entirely clear whether, by these words, Whitney intends to summarize her complaint or to amplify it. The result, in any event, is the same. Although an employee may seek judicial relief for incidents not specifically enumerated in his EEOC complaint, so long as the allegations arise out of or are reasonably related to the EEOC charge, *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir. 1973); *Van Hoomissen v. Xerox Corp., supra,* 368 F.Supp. at 832, we think the phrase "took reprisal action against her" should be stricken as surplusage under Federal Rules of Civil Procedure 12(f). If the phrase refers to defendant's motive, it is irrelevant. If it is Whitney's intent to allege that prior to the eventual discharge, Adventists engaged in harassment (see Complaint ¶ VI), or that the discharge was brought on by her complaints to the New York City Human Rights Commission or the EEOC (see Complaint ¶ VI & VIII), these facts may be proved under the averment of a "denial of equal terms and conditions of employment." If, on the other hand, it is simply rhetorical summation, it is redundant and immaterial.

For the reasons set forth above, Adventists' motion to dismiss is granted insofar as it applies to the allegations based on § 1981 and insofar as it relates to the alleged discriminatory eviction. The motion to strike the prayer for compensatory and punitive damages is granted with leave to the plaintiff to amend her complaint to demand appropriate Title VII relief. The motion to strike the "reprisal action" phrase is granted. In all other respects the motion is denied.

It is so ordered.