Susan Long LITTLE, Plaintiff,

v.

ST. MARY MAGDALENE PARISH, Defendant.

Civ. A. No. 89–1152.

United States District Court, W.D. Pennsylvania.

May 23, 1990.

Jay N. Silberblatt, Pittsburgh, Pa., for plaintiff.

Joni Mangino, Pittsburgh, Pa., Philip Murren and Maura Quinlan, Harrisburg, Pa., Linda Drago, Diocese of Pittsburgh, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BLOCH, District Judge.

Plaintiff Susan Long Little brought this action against St. Mary Magdalene Parish (the Parish) as a result of the Parish's decision in April of 1987 not to renew Little's employment contract for the 1987–88 school year. Plaintiff's suit alleged that the Parish's decision not to renew her employment contract violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 (Count I), the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951, *et seq.* (Count II), and constituted breach of contract under Pennsylvania law (Count III).

The parties have filed cross motions for summary judgment. In her motion, plaintiff claims that, although § 702 of Title VII allows a religious educational institution to make employment decisions based on religion, the Roman Catholic Parish waived its Title VII exemption when it hired Little, a Protestant, to teach in its school. As to plaintiff's Title VII claim, defendant's motion asserts that the Parish's decision not to renew Little's employment contract falls within the religious exemption provided in 42 U.S.C. § 2000e–1 and is protected by the establishment clause and the free exercise clause of the first amendment. For the reasons that follow, this Court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.

## I. Facts

Little was employed by the Parish from August 29, 1977, through the 1986 school year as an elementary teacher. The Parish is a religious entity operated under the authority of the Roman Catholic Church and is located in Homestead, Pennsylvania. At all times pertinent to Little's employment at the Parish, Little was not a member of the Catholic religion nor a baptized Catholic.

During her first school year and each school year thereafter, Little executed employment contracts with the Parish acknowledging her employment status. Her 1979, 1980, 1981, 1982 and 1983 employment contracts contained a "Cardinal's Clause" providing that the Parish had the right to terminate Little's employment for "public rejection of the official teachings, doctrine or laws of the Roman Catholic Church."[1] Little did not recall ever having signed an employment contract with the Parish that did not contain the Cardinal's Clause. (Little deposition, p. 13). Little admitted that she did not believe herself free to violate the Cardinal's Clause in various respects. (Little deposition, pp. 13–16). In order to continue her employment at the Parish, Little also was required to participate in and otherwise pursue ceremonies, practices and beliefs adhered to by members of the Catholic religion.

Little was designated as a tenured teacher by the Parish. Under ordinary circumstances, tenured teachers are permitted to continue to teach in the Parish's school from year to year. In August of 1986, Little requested and was granted leave of absence from her teaching responsibilities for the 1986–87 school year. In that same month, Little, who was divorced in 1979, married a Roman Catholic without obtaining an annulment of her first marriage. Obtaining an annulment of a prior marriage is not required by the Protestant religion, but is the proper canonical process available from the Roman Catholic Church to obtain validation of a second marriage.

---

1. The Cardinal's Clause provided:
   Teacher recognizes the religious nature of the Catholic School and agrees that the Employer has the right to dismiss Teacher for serious public immorality, public scandal, or public rejection of the official teachings, doctrine or laws of the Roman Catholic Church, thereby terminating any and all rights that the Teacher may have hereunder subject, however, to the personal due process rights promulgated by the Roman Catholic Church.

Little requested but was refused an employment contract for the 1987–88 school year because she had remarried without obtaining an annulment of her first marriage. The Parish deemed Little's failure to obtain an annulment to be "public rejection of the official teachings, doctrine or laws of the Roman Catholic Church" under the Cardinal's Clause.

## II. Summary judgment

A trial court may enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law will determine which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact regardless of which party would have the burden of proof at trial. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) (in banc), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). If, however, the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the non-moving party has failed to provide evidence sufficient to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court must view the facts and the evidence in the light most favorable to the non-moving party. *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987).

## III. Discussion

This suit presents the issue of whether a religious organization which is exempt from claims of religious discrimination under § 702 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1, may be held to have waived the application of that exemption with respect to the terms and conditions of employment of an individual who is not a member of that organization.

Title VII provides that it is an unlawful employment practice for an employer:

(1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin;

42 U.S.C. § 2000e–2(a)(1). The 1972 Amendment to Title VII exempted religious groups from Title VII prohibitions with respect to the employment of individuals of a particular religion to perform work connected with its activities:

This Title shall not apply to an employer with respect to ... a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e–1 (§ 702).

Section 702 allows religious groups to discriminate based on religion with respect to the employment of individuals to perform work connected with their religious or secular activities. *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987). Courts have also applied the § 702 exemption to employment firing disputes. *Id.; Whitney v. Greater New York Corp. of Seventh Day Adventists*, 401 F.Supp. 1363 (S.D.N.Y.1975). In the present case, both parties agree that Little's employment contract was not renewed because of her religion. Therefore, the Parish's decision not to renew the employment contract of one of its employees because of her religion falls within the § 702 exemption of Title VII.

Plaintiff argues that the Parish either explicitly or implicitly waived its § 702 exemption when it hired an employee who

was not a Roman Catholic. Plaintiff cites no authority holding that the § 702 exemption may be waived, but supports her argument with authority holding that venue provisions may be implicitly waived. Even if the latter cases were of relevance in the Title VII context, § 702 and the authority interpreting it compel this Court to conclude that a religious employer does not waive its § 702 exemption when it employs an individual who is not a member of the employer's religion.[2]

When a religious group or organization attempts to discriminate in the name of religion, conflicts arise which pit the religious group's rights against the individual's rights. On the one hand, allowing a religious group to practice religious discrimination in employment matters advances first amendment goals by allowing religious groups to keep their beliefs intact. On the other hand, allowing religious groups to discriminate may seriously infringe upon the individual's right to be free from discrimination based on religion. *See* D. Okamoto, *Religious Discrimination and the Title VII Exemption for Religious Organizations: A Basic Value's Analysis for the Proper Allocation of Conflicting Rights*, 60 S.Cal.L.Rev. 1375 (1987).

In passing the § 702 exemption, Congress chose to protect the needs and rights of religious organizations regarding their freedom of religion, and allowed those organizations to discriminate based on religion in the employment context. Consequently, plaintiff may not assert that her right to be free from religious discrimination was violated when a religious educational institution did not renew her employment based on religion.

■ Nor did the Parish lose its right to discriminate based on religion after it hired plaintiff, a non-Catholic. A religious organization's right to make employment decisions based on religion exists throughout the employment relationship, not just during the hiring process. *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327,

107 S.Ct. 2862, 97 L.Ed.2d 273 (1987) (applying § 702 exemption to employment firing dispute). The same first amendment concerns that allow a religious organization to discriminate based on religion when hiring employees may also exist when terminating employees.

Because the Parish's decision not to renew Little's employment contract was based on religion, the Parish's actions are exempt from Title VII prohibitions pursuant to 42 U.S.C. § 2000e–1. Defendant's motion for summary judgment will be granted.

An appropriate Order will be issued.

## JUDGMENT ORDER

AND NOW, this 23rd day of May, 1990, upon consideration of Plaintiff's Motion for Summary Judgment filed in the above captioned matter on December 7, 1989, and Defendant's Motion for Summary Judgment filed in the above captioned matter on December 21, 1989,

IT IS HEREBY ORDERED that plaintiff's Motion is DENIED and that defendant's Motion is GRANTED. IT IS FURTHER ORDERED that judgment be, and hereby is, entered in favor of Defendant and against Plaintiff.

---

**2.** It is also doubtful whether the plaintiff could prove waiver in the instant case. The Cardinal's Clause, which was contained in Little's employment contracts, preserved the Parish's right to terminate Little's employment for religious reasons.