Theodore H. ROSENBLATT, Plaintiff,

v.

BIVONA & COHEN, P.C., Defendant.

95 Civ. 4825 (SAS).

United States District Court,
S.D. New York.

Nov. 26, 1996.

Peter Cimino, Bivona & Cohen, P.C., New York City, for Defendant Bivona & Cohen, P.C.

## MEMORANDUM OPINION

SCHEINDLIN, District Judge.

Plaintiff Theodore H. Rosenblatt, a white man, alleges that he was discharged from his employment as a lawyer because he is married to a black woman. He sues his employer, Bivona & Cohen, P.C., for violating 42 U.S.C. § 2000e–2 ("Title VII"), 42 U.S.C. § 1981, and the New York State Executive Law. Defendant Bivona & Cohen moves for summary judgment on the grounds that (1) plaintiff lacks standing to maintain a suit for relief under the foregoing civil rights statutes; and (2) plaintiff's filing with the Equal Employment Opportunity Commission ("E.E.O.C.") was untimely, thereby depriving

this Court of subject matter jurisdiction over plaintiff's Title VII claims.[1]

For the reasons set forth below, defendant's motion is denied.

## DISCUSSION

### I. *Standing to Sue*

Rosenblatt, a white attorney, joined the law firm of Bivona & Cohen in 1982 and was discharged twelve years later. He claims that his employment was terminated because he is married to a woman of a different race. Because the Second Circuit has not addressed whether a white person, allegedly discriminated against because of an interracial marriage, has standing to sue under the civil rights statutes, both parties have submitted extensive briefs.

### A. *Title VII Claim*

■ Defendant argues that plaintiff lacks standing to sue under Title VII because plaintiff is alleging racial discrimination against his wife, not himself. Defendant relies on *Ripp v. Dobbs Houses Inc.*, 366 F.Supp. 205 (N.D.Ala.1973), one of the first cases to address this subject. Ripp, who is white, claimed he was discharged because of his association with fellow black employees. The court found that the gravamen of Ripp's complaint was that his employer "abridged his freedom to associate with persons of his own choosing," a claim not cognizable under Title VII. *Id.* at 208. Because Ripp did not explicitly complain that he suffered discrimination based on his own race, the court concluded that he lacked standing.

*Adams v. Governor's Comm. on Postsecondary Educ.*, 1981 WL 27101 (N.D.Ga. Sept. 3, 1981), followed *Ripp*, holding that a white person allegedly discriminated against because of his wife's race lacked standing to sue under Title VII. The court focused on the wording of the statute and concluded that it only protects individuals discriminated against because of their *own* race, and not the race of their spouse.[2]

Several courts have rejected the highly restrictive holdings of *Ripp* and *Adams* and have instead followed the reasoning of *Whitney v. Greater New York Corp. of Seventh–Day Adventists*, 401 F.Supp. 1363 (S.D.N.Y. 1975). In holding that a white person, allegedly discharged because of her association with a black person, had standing to bring a Title VII action, the *Whitney* court stated:

> [I]f [plaintiff] was discharged because, as alleged, the defendant disapproved of a social relationship between a white woman and a black man, the plaintiff's race was as much a factor in the decision to fire her as that of her friend. Specifying as she does that she was discharged because she, a white woman, associated with a black, her complaint falls within the statutory language that she was "discharge[d] ... because of [her] race."

*Id.* at 1366.

In *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir.1986), the Eleventh Circuit found the *Whitney* reasoning "irrefutable." The court held that discrimination based upon plaintiff's interracial marriage or association *by definition* is discrimination based on his race. The *Parr* court stressed its duty to "make sure that the [Civil Rights] Act works, and [that] the intent of Congress is not hampered by a combination of strict construction of the stat-

---

1. During the pre-motion conference, the defendant was instructed to limit its summary judgment motion to the sole issue of plaintiff's standing to sue under the civil rights statutes. Nonetheless, I will also consider whether plaintiff's E.E.O.C. filing was timely because both parties have fully briefed the issue. Additional grounds for summary judgment will not be addressed at this time, but may be raised in a separate summary judgment motion.

2. Title VII provides, in relevant part:
   It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of *such individual's race*, color, religion, sex, or national origin.
   42 U.S.C. § 2000e–2(a) (emphasis added). The *Adams* court reasoned that the words "such individual's race" as used above make clear that the statute does not cover discrimination against a person because of his relationship to persons of another race.

ute in a battle with semantics." *Id.* (quoting *Culpepper v. Reynolds Metals Co.,* 421 F.2d 888, 891 (5th Cir.1970)).

Numerous district court opinions have adopted the *Whitney* and *Parr* reasoning and have found Title VII applicable to defendants who take adverse action against a white plaintiff because of his association with blacks. *See, e.g., Erwin v. Mister Omelet of America, Inc.,* 1991 WL 32248 at *3 (M.D.N.C. Jan. 15, 1991) (Title VII prohibits employment discrimination based upon a person's association with someone of another race); *Gresham v. Waffle House, Inc.,* 586 F.Supp. 1442 (N.D.Ga.1984) (white plaintiff stated claim under Title VII by alleging she was discharged by her employer because of her interracial marriage to a black man); *Holiday v. Belle's Restaurant,* 409 F.Supp. 904 (W.D.Pa.1976) (the discharge of a white employee for associating with blacks is racial discrimination and violative of Title VII).

The weight of these cases is persuasive and their logic is convincing. Plaintiff has alleged discrimination as a result of his marriage to a black woman. Had he been black, his marriage would not have been interracial. Therefore, inherent in his complaint is the assertion that he has suffered racial discrimination based on his own race. As a result, plaintiff has standing to pursue his civil rights claims under Title VII.

### B. *Section 1981 Claim*

■ Defendant argues that plaintiff does not have standing to sue under Section 1981 despite controlling case law to the contrary. It is well-settled that a claim of discrimination based on an interracial relationship or association is cognizable under Section 1981. *See, e.g., Parr v. Woodmen of the World Life Ins. Co.,* 791 F.2d 888, 890 (11th Cir.1986) (a claim of discrimination based upon an interracial marriage is cognizable under Section 1981); *Fiedler v. Marumsco School,* 631 F.2d 1144, 1150 (4th Cir.1980) (a white student expelled from school for allegedly dating a black student had standing to sue under Section 1981); *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 312 (2d Cir.1975) (a white

man who was discriminated against because he sold his house to a black person has standing to sue under Section 1981); and *Faraca v. Clements,* 506 F.2d 956 (5th Cir.), *cert. denied,* 422 U.S. 1006, 95 S.Ct. 2627, 45 L.Ed.2d 669 (1975) (Section 1981 proscribes discrimination based on an interracial marriage). Moreover, *Adams v. Governor's Comm. on Postsecondary Educ.,* 1981 WL 27101 at *3 (N.D.Ga. Sept. 3, 1981), a case relied on by defendant in its Title VII argument, held that plaintiff also had standing to sue under Section 1981. In light of the foregoing authority, defendant's argument that plaintiff lacks standing to sue under Section 1981 must fail.

### C. *The New York State Human Rights Law*

■ Because the New York State Human Rights Law is applied in a fashion consistent with the federal civil rights laws, *see Tomka v. The Seiler Corp.,* 66 F.3d 1295, 1304 n. 4 (2d Cir.1995), plaintiff's state law claim is also viable. In *State Division of Human Rights v. Village of Spencerport,* 78 A.D.2d 50, 434 N.Y.S.2d 52, 55 (4th Dep't 1980), the court noted that a complainant could sue under the state statute if the party charged "is motivated by some proscribed bias toward the spouse."

In sum, the weight of authority construing both the federal and state civil rights statutes is in the plaintiff's favor. Accordingly, defendant's motion for summary judgment on the ground that plaintiff lacks standing is denied.

### II. *The E.E.O.C. Filing*

■ Before a Title VII action may be brought in federal court, a charge of discrimination must be timely filed with the E.E.O.C. Generally, a charge must be filed with the E.E.O.C. within 180 days after the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e)(1). But in a state that has its own fair employment practices agency, such as New York, the time limit is extended to 300 days.[3] The charge is not

---

**3.** Before a complainant can benefit from this 120 day extension, he must "initially institute[ ] pro-

ceedings with a State or local agency." *See* 42 U.S.C. § 2000e–5(e)(1). Although plaintiff did

deemed "filed" until 60 days after submission to the state agency or until the state agency terminates its proceedings by waiver or otherwise. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *E.E.O.C. v. Commercial Office Products Co.*, 486 U.S. 107, 111, 108 S.Ct. 1666, 1669, 100 L.Ed.2d 96 (1988). Therefore, to ensure a timely filing with the E.E.O.C. in New York, a claimant must submit a charge of discrimination with the state or local agencies within 240 days of the alleged discrimination. *See Mohasco*, 447 U.S. at 814 n. 16, 100 S.Ct. at 2491 n. 16. If a claimant fails to do so, the charge will still be timely filed if the state or local agency terminates its proceedings before 300 days have passed.

■ Plaintiff submitted a discrimination charge to the E.E.O.C. and the local agencies 250 days after the last discriminatory act. Therefore, plaintiff's claim could only be timely filed if the state or local proceedings were terminated or waived within 50 days. Here, the proceedings were waived upon receipt of the submission. Because the New York City Commission on Human Rights ("N.Y.C.C.H.R.") and the New York State Division of Human Rights ("N.Y.S.D.H.R.") have waived their right to prosecute plaintiff's type of discrimination claim pursuant to worksharing agreements with the E.E.O.C., plaintiff's filing with the E.E.O.C. occurred within 300 days and thus was timely. *See* Worksharing Agreement between N.Y.C.C.H.R. and E.E.O.C. for fiscal year 1995 and Worksharing Agreement between N.Y.S.D.H.R. and E.E.O.C. for fiscal year 1995, Attached as Ex. A to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment.[4]

Bivona & Cohen, overlooking the foregoing waiver provisions, erroneously argues that plaintiff's local and state proceedings were not terminated or waived. As a result, defendant contends that the charge was deemed "filed" 60 days after submission to the E.E.O.C., 310 days after the last discriminatory act. Because the Second Circuit has held that these self-executing waivers effectively "terminate" state and local agency proceedings, *see Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304 (2d Cir.1996), as a matter of law, plaintiff's charge was timely filed with the E.E.O.C. Accordingly, defendant's legal argument must fail.

## CONCLUSION

For the foregoing reasons, defendant's motion is denied. A pretrial conference is scheduled for December 20, 1996 at 4:30 p.m.

SO ORDERED.

---

not physically file a charge with the local or state agency, the "Charge of Discrimination" form filed with the E.E.O.C. was addressed to both the "New York Human Rights Commission" and the E.E.O.C. The form also contained a box which stated "I want this charge filed with both the E.E.O.C. and the State or local Agency, if any." In Section II(A) of the Worksharing Agreements between the E.E.O.C. and the New York City Commission on Human Rights ("N.Y.C.C.H.R.") and the New York State Division of Human Rights ("N.Y.S.D.H.R."), the state and local agencies have authorized the E.E.O.C. to accept charges on their behalf. *See* Worksharing Agreement between N.Y.C.C.H.R. and E.E.O.C. for fiscal year 1995 and Worksharing Agreement between N.Y.S.D.H.R. and E.E.O.C. for fiscal year 1995, Attached as Ex. A to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment. Therefore, plaintiff's filing with the E.E.O.C. constitutes a joint filing with the state or local agencies and satisfies Title VII's "initially instituted" requirement. *See Griffin v.*

*City of Dallas*, 26 F.3d 610, 612–13 (5th Cir. 1994) (the E.E.O.C.'s acceptance of a discrimination charge satisfies the requirement for instituting proceedings with the state agency under the Title VII provision extending the statute of limitations to 300 days.).

4. The worksharing agreements provide, in relevant part:

> For charges originally received by the EEOC and/or to be initially processed by the EEOC, the [N.Y.C.C.H.R. and N.Y.S.D.H.R.] waives its rights of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.
> In addition, the EEOC will initially process the following charges:—All Title VII charges received by the [N.Y.C.C.H.R. and N.Y.S.D.H.R.] 240 days or more after the date of violation.