**Ellen FITZGERALD, Plaintiff,**

v.

**FORD MARRIN ESPOSITO WITMEYER & GLESER, L.L.P., Defendant.**

**No. 96 Civ. 7491(TPG).**

United States District Court, S.D. New York.

Feb. 23, 1999.

---

622

Anne L. Clark, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for plaintiff.

Paul V. Majkowski, Ford, Marrin, Esposito, Witmeyer & Gleser, L.L.P., New York City, for defendant.

## OPINION

GRIESA, Chief Judge.

Plaintiff Ellen Fitzgerald brings this action against defendant Ford Marrin Esposito Witmeyer & Gleser, L.L.P. alleging sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title VII"); the New York State Executive Law § 296 *et seq.* (the "State Law"); and the Administrative Code of the City of New York § 8–107 *et seq.* (the "City Law"). Defendant moves for summary judgment on the grounds that (1) plaintiff's Title VII claim is time barred; (2) plaintiff cannot make out a prima facie case; and (3) plaintiff failed to avail herself of internal procedures to address sex harassment claims. Plaintiff opposes defendant's motion.

Defendant also moves to strike the declaration of Suzanne O'Neil for failure to comply with Fed.R.Civ.P. 56(e) and to

strike portions of the affidavit of Ellen Fitzgerald as a sham affidavit.

Defendant further moves to amend its answer to clear up any ambiguity as to whether the affirmative defense of untimeliness of plaintiff's Equal Employment Opportunity Commission ("EEOC") charge was sufficiently raised.

Defendant's motions to strike are denied. Defendant's motion to amend the answer is granted. Defendant's motion for summary judgment is denied.

### Plaintiff's Claim

Plaintiff, who graduated from law school in May 1990, was an associate at Ford Marrin from November 23, 1993 to February 2, 1995. On January 23, 1995 plaintiff gave notice of her resignation, and worked her last day on February 2, 1995.

Plaintiff had been a litigation associate at two different law firms before beginning at Ford Marrin. After leaving Ford Marrin, plaintiff worked for the law firm of Healy & Baillie, until July 1998, when she became an Assistant Attorney General in the Litigation Bureau of the office of the New York State Attorney General.

During plaintiff's employment, Ford Marrin had nine partners, including one female partner, and 13 to 16 associates.

Plaintiff filed a charge with the EEOC on September 11, 1995 alleging sex discrimination. The charge form contains a box, directly above the box within which appears plaintiff's signature, which contains the following language: "I want this charge filed with both the EEOC and the State or local agency, if any."

The EEOC and the New York State Division of Human Rights had entered into a "Worksharing Agreement" for the fiscal year beginning October 1, 1994 and ending September 30, 1995. Under the Worksharing Agreement, the DHR authorized the EEOC to accept charges on its behalf, but required that dual-filed charges initially received by the EEOC were to be forwarded to the DHR within two days of receipt by the EEOC. Agreement §§ II(A, E). The Agreement further provided that:

> [f]or charges originally received by the EEOC and/or to be initially processed by the EEOC, the [DHR] waives its rights of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

Agreement § III(A)(1). The exclusive jurisdiction here referred to will be discussed later in this opinion.

Neither party has provided the court with any information on what proceedings, if any, were conducted by the EEOC or the DHR. On September 9, 1996 plaintiff was issued by the EEOC a right to sue letter. On October 2, 1996 plaintiff instituted this action.

Plaintiff alleges that the atmosphere created by certain associates and partners at Ford Marrin constituted a hostile work environment. Plaintiff alleges numerous incidents of harassing conduct by these individuals for which she provides dates from December 1993 through December 1994, as well as certain instances of conduct or patterns of conduct for which no date is specified.

### Discussion

#### Summary Judgment Standard

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the burden of identifying the evidence that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. All ambiguities must be resolved and all reasonable inferences must be drawn in favor of the nonmoving party. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997); *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir.1996).

### Timeliness of Federal Claim

Plaintiff claims that defendant is barred from raising the affirmative defense of limitations to the federal claim because it was not properly pleaded.[1] The court does not find any such bar to asserting the defense, which appears to be sufficiently pleaded in the answer. In any event, defendant moves to amend the answer to clear up any doubt and the court grants that motion. *See* Fed.R.Civ.P. 15(a); *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 855 (2d Cir. 1981).

### Filing Period

The proper and timely filing of a charge with the EEOC is a pre-condition of instituting of a Title VII action.

42 U.S.C. § 2000e–5(e) provides that an EEOC charge generally must be filed within 180 days after the alleged unlawful employment practice occurred. Where, however, a charge is first lodged with a "State or local agency with authority to grant or seek relief," an EEOC charge must be filed within 300 days after the unlawful practice occurred or within 30 days after receiving notice that the State or local agency has terminated proceedings, whichever is earlier. *Id.* As previously noted, the Worksharing Agreement provided that dual-filed charges initially received by the EEOC were to be forwarded to the DHR. Although neither party has provided information on whether plaintiff's charge initially received by the EEOC was actually forwarded to the DHR, the court will assume for purposes of this motion that it was.

Several district courts in this Circuit have ruled that a charge first received by the EEOC and then forwarded to a state agency under the terms of a worksharing agreement is subject to the 300–day filing period. *McGuirk v. Eastern Gen. Ins. Agency*, 997 F.Supp. 395, 396–98 (W.D.N.Y.1998); *Brennan v. City of White Plains*, 1998 WL 75692, at *4 (S.D.N.Y. Feb.20, 1998); *Rivera v. City of New York*, 1997 WL 539776, at *4 n. 2 (S.D.N.Y. Aug.28, 1997); *Rosenblatt v. Bivona & Cohen, P.C.*, 946 F.Supp. 298, 301 n. 3 (S.D.N.Y.1996). The court finds the reasoning of these cases persuasive and holds that plaintiff's charge filed with the EEOC, which presumably was forwarded to the state agency pursuant to the Worksharing Agreement, is properly considered "initially instituted" in the state agency for purposes of invoking the 300–day limitation period.

Having determined that the applicable filing period in this case is 300 days, there is still the question of whether the initial filing, followed, as assumed, by reference to the state agency, was a filing with the EEOC for limitations purposes. Under Title VII, in a state having its own antidiscrimination agency, a claim cannot be filed with the EEOC for 60 days after the date proceedings begin with the state agency, "unless such proceedings have been earlier terminated." 42 U.S.C. § 2000e–5(c). As a result of the combina-

---

1. The statute of limitations for an action brought under the NYHRL is three years from the date of the alleged discrimination. N.Y.Civ.Prac.L. & R. 214(2). Moreover, the three year period is tolled during the pendency of a DHR charge. *See Brennan v. City of White Plains, et. al.*, 1998 WL 75692, at * 4 (S.D.N.Y. Feb.20, 1998). Plaintiff filed her complaint on October 2, 1996, less than three years after she began her tenure at Ford Marin on November 23, 1993. As such, there is no limitations issue with respect to the State Law claim.

tion of the two relevant statutory provisions, if the 60–day waiting period is in effect, then the 300–day period includes 240 days before the charge is initially received and 60 days of waiting after the charge is received. Defendant claims that while plaintiff's charge was received by the EEOC on September 11, 1995, it cannot be considered filed until November 10, 1995 (60 days later). Defendant makes this claim without providing any information as to when the EEOC actually began processing plaintiff's charge or began its investigation. Nonetheless, applying the 300–day period to the November 10 date, defendant contends that plaintiff's charge is untimely as to all events preceding January 14, 1995.

However, the court must consider the effect of Section III(A)(1) of the Worksharing Agreement which, as noted earlier, waives the DHR's rights of exclusive jurisdiction to initially process charges such as plaintiff's for a period of 60 days "for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day." Agreement § III(A)(1). While it is clear that this provision is intended to waive the 60–day deferment period, the question is whether the waiver does away with the 60–day period for purposes of applying the EEOC filing requirement in Title VII. Title VII expressly provides for only one method of avoiding the 60–day deferral period. That method is termination of proceedings by the state agency prior to the expiration of the 60–day period. 42 U.S.C. § 2000e–5(c). Nowhere does the statute mention the option of waiver by the state agency. Nonetheless, courts have given effect to the waiver provisions of worksharing agreements.

In *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 114–115, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988), the Supreme Court held that the term "terminated," as used in § 2000e–5(c), does not necessarily mean completed. The Court held that where the state agency notified the EEOC that it "waived its right under Title VII to initially [and exclusively] process the charge" during the initial 60–day period, the state agency proceedings were considered "terminated," despite the state agency's retention of jurisdiction to act on the charge "after the conclusion of the EEOC proceedings." *Id.* at 113, 108 S.Ct. 1666. The Court concluded that "a state agency 'terminates' its proceedings when it declares that it will not proceed, if it does so at all, for a specified interval of time." *Id.* at 115, 108 S.Ct. 1666.

The EEOC regulations are in accordance with the above ruling and provide that the 60–day deferral period can be avoided if either the state agency proceedings are terminated or the state agency waives its right during the 60–day period to exclusively process the charge. 29 C.F.R. § 1601.13(b)(1).

The Second Circuit in *Ford v. Bernard Fineson Development Ctr.*, 81 F.3d 304 (2d Cir.1996), has accepted the EEOC regulations as a valid interpretation of Title VII. *Id.* at 309. Moreover, the *Ford* court held that "a Worksharing Agreement may contain a self-executing waiver of a state agency's right to exclusively handle discrimination claims for 60 days, and that this waiver may constitute 'termination' of the state agency's proceedings under § 2000e–5(c)." *Id.* at 311. *See also McGuirk*, 997 F.Supp. at 397; *Rosenblatt*, 946 F.Supp. at 301.

In accordance with these authorities, the court holds that at the time plaintiff submitted her charge to the EEOC, the waiver provision of the Worksharing Agreement was triggered and that it had the effect of "terminating" the DHR's proceedings for purposes of § 2000e–5(c). This meant that the charge was deemed "filed" with the EEOC at that time for limitation purposes. Accordingly, plaintiff's EEOC charge, filed on September 11, 1995, was timely as to all claims arising on or after November 15, 1994.

*Continuing Violation*

 Plaintiff seeks to include as timely alleged wrongful acts occurring even before the November 15, 1994 cut-off date on the theory that there was a continuing violation. Plaintiff claims that to include as timely acts preceding November 15, 1994, she must show that "a discriminatory act" occurred after November 15, 1994 which was part of a pattern of conduct constituting a continuing violation, and that she has alleged several such incidents. The claim of continuing violation raises triable issues of fact, which cannot be disposed of by way of summary judgement.

*The Merits*

 On the issue of whether conduct attributable to Ford Marrin occurring during the course of plaintiff's employment constituted a hostile working environment, the court finds that there are triable issues of fact. On the issue of whether plaintiff was constructively discharged by Ford Marrin, the court also finds that there are triable issues of fact.

*Conclusion*

Defendant's motion to amend its answer is granted. Defendant's motion to strike the declaration of Suzanne O'Neil and portions of the affidavit of Ellen Fitzgerald is denied. Defendant's motion for summary judgment is denied.

SO ORDERED.